This is Affymetrix Inc v. Multilyte LTD, number 051460. Mr. Plamek, when you are ready. Thank you, Your Honor. May it please the Court, Michael Plamek for Appellant Multilite. As a preliminary matter, I would like to advise the Court about the status of the merged reexamination proceedings that were initiated by both Multilite and Affymetrix and mentioned in the party's briefs. Upon inquiry to the Patent Office by Multilite's Patent Council, the Council has been advised that the Patent Office does intend to issue a notice of intent to issue a reexamination certificate for all claims of the patents in suit. All claims will come out of the reexamination with identical language to the originally issued claims. I'd like to move to the term binding agent. This is a classic case of a patentee using the ordinary and customary meaning of a claim term to claim the entire scope of what was understood by that term of persons of skill in the art at the time of the invention. The District Court imposed a protein-only limitation on the term binding agent. However, no such protein-only limitation appears anywhere in the plan, nor is it supported by the intrinsic or extrinsic evidence. The claims do not restrict binding agent to any particular subclass, such as protein-only. And the reason for that is clear. These inventions are addressed to the amount of binding agents that are used in an assay, not the type of binding agent that is used. That is made very clear repeatedly by the patentee in the specification. The patentee mentions explicitly that a wide variety of binding agents may be used, provided they have binding sites which are specific for the aniline in question as compared with any other gradient in the fluid in question. That is to say, so long as the binding agent can recognize and bind reversibly to particular anilines as opposed to other substances in the solution, that is the requirement that a binding agent must satisfy. As long as there's a binding site? The binding site, of course, is a term that is used by the District Court to impose a protein-only limitation. And there are claims in the patent that mention binding sites specifically, but claims that do not. On the issue of binding site, the District Court said that there was a so-called biological meaning of binding site that limited it to proteins. The District Court says in its opinion that the plain language meaning supports Multilite's position, but goes on to talk about a so-called biological meaning. That biological meaning has no evidence whatsoever to support it. The District Court cites one sentence out of a brief filed by Affymetrix lawyers in the United Kingdom, which on its face does not restrict the definition to proteins. It also talks about, the District Court talks about deposition testimony and says that the experts had trouble applying the phrase. However, what the District Court ignored with respect to binding site is a mountain of extrinsic evidence that was submitted by Multilite to show the term binding site referred to repeatedly by patents, treatises, articles to refer to nucleic acid hybridization, that is DNA, binding to DNA. One need to look no further than this Court's own opinion in Genentech, 289 F2nd at 769, talking about ribosome binding sites and in that opinion talking about hybridization reaction, RNA binding to RNA. With respect to ribosome binding site, we also see the term primer binding site, talking about DNA binding to DNA. So is the whole issue then whether or not nucleic acid has a binding site? That is how the District Court framed the issue. We have put forward a construction of binding agent that is neutral. We have said that a binding agent is a molecule that has a site or sites that bind to another substance. The District Court then took the site part of that construction and put on a protein only limitation. It limited it to proteins. That's right. The District Court put forward what it thought was a plain language meaning of binding site. It said any site where binding occurs and rejected that plain language meaning. Our position is that the definition of both binding agent and binding site at worst should be neutral to nucleic acid but certainly cannot exclude nucleic acid given what I would call the mountain of extrinsic evidence that we have presented showing time and time again we see the term binding agent used specifically to talk about DNA probes, specifically to talk about DNA binding to DNA. We also have in the patent here a prior art reference, the 916 patent to Littman, talking specifically about DNA probes in that patent called receptors in a binding pair. The patentee has cited prior art talking specifically about DNA probes. The Littman patent also talks specifically about DNA analyze which are termed ligands in that patent. Here the patentee has done what the patent law provides. He has used a broad term. He has cited prior art using that term consistently with his broad meaning. Prior art cited on the patent which is intrinsic evidence for claim construction demonstrates that this term is to be inclusive and to include DNA. The District Court erred by excluding that from the claim construction also with respect to doctrine of equivalence. Regardless, if this court were inclined to agree with the District Court, of course we dispute that. But certainly from the perspective of doctrine of equivalence, there is no specific exclusion of DNA anywhere in this patent. The only exclusion of DNA comes from the District Court's construction. So you're telling us that there really is no scientific difference in this term between the action of a DNA probe, for example, and its response to the complementary DNA or to the DNA that it's seeking to probe for and the immunological kind of binding. But the trial judge seemed to think that the absence of any reference to DNA or RNA in the patent suggested that perhaps the inventor did recognize that the differences rather than the similarities were such that this wasn't part of his invention. There are, of course, differences between antibodies and DNA. But there are no scientific differences from the perspective of this patent and what the patent announces the properties of the binding agent must be to work in this invention. And that, again, is to the ability to specifically recognize analytes as opposed to other substances in the solution. What the District Court erred is looking at a patent where the patentee has expressed a preferred embodiment, the preferred embodiment being antibody binding agents, but making clear that the term is broader than the preferred embodiment. And this puts this case of a piece with the home diagnostics case, which, of course, we cite in a brief, another case involving an assay for determining concentration of an analyte, in that case glucose and whole blood, the court pointing out that although the patentee had discussed a preferred embodiment, he used claiming terms that were broader than the preferred embodiment. But you're telling us that any assay, therefore, that works with solutions of the dilution that you're talking about is covered, no matter what? Any assay involving binding agents that, of course, involve, that also have the other requirements of the claim, small amounts of binding agent, measuring a parameter representative of fractional occupancy of the binding sites of the binding agent by analyte, in the case of the 720 patent. In the case of the 099 patent, there's a 0.1 V over K limitation. There's a requirement of small spots and high coding density. So this is not a patentee claiming all conceivable assays of any kind. He is claiming all assays in which the inventive principle of using small amounts or minuscule amounts of binding agent in the case of the 720 patent. But that was in the prior art, was it not? That was not in the prior art. The prior art did not contain the minuscule amounts of binding agent, nor did it contain the 0.1 V over K limitation. And that's the critical point. The critical point is that the prior art used very large amounts of binding agent to bind all or substantial portion of the analyte in the solution. The inventor comes and says, I have this incredible technique where I can use very, very minuscule amounts of binding agent to do things that people had not known of before. What he does not come into the patent office and say is that it depends on the type of binding agent. There's no discussion of the type because the type for the purpose of the minuscule amount is completely irrelevant. The district court was under the misimpression that by adopting multi-lights construction, he was opening the door to a floodgate of all prior art systems. And that is simply not the case. The prior art was distinguished on the basis of the amount of binding agent. It was an extremely counterintuitive principle. But when one uses that very minuscule amount of binding agent, one does not care what type of binding agent is used as long as it can select analyte as opposed to other substances in the solution. And that's why the limitation is fundamentally wrong. Appometrics talks about the context of the invention. We're very comfortable with the context of the invention. As I said, it does not relate to the type of binding agent that is being used. I thought the district court put great weight on the absence of any reference to nucleotides. The district court did. The district court did. And there is no specific reference in the specification to the word nucleotide or nucleic acid. But as I point out, the intrinsic record includes the 916 patent allotment, which does explicitly mention DNA probes in an assay. And that is part of the record. That is part of the public notice function. That is how the patentee claims and makes clear that the term binding agent is being used to its full extent. Do you want to save your rebuttal time?  Thank you, Your Honor. I appreciate that. Mr. Riley. Good morning, and may it please the court. I am George Riley. I represent the appellee Appometrics. As this court has repeatedly emphasized in Nystrom and Phillips, we must look at the entire intrinsic record as a person skilled in the art at the time of the invention. And in this case, that intrinsic record shows clearly that this invention was limited to binding agents that were protein molecules. But were DNA probes known and used at the time that the invention was made or the patent application filed? Certainly DNA had been discovered in the 50s, and there was a body of knowledge, such as northern blot. None of that material, not a single reference to nucleic acid to nucleic acid binding, what is called hybridization, was ever mentioned in the record of this patent. But if the DNA probes and the principles of using them were later developed, and all of the other aspects, the apparently significant scientific advance of being able to work at these solutions, isn't that something within the broader scope of what had been proposed? No, not at all, because the scope was proposed in the prosecution of this patent more than 20 years ago, in 1984 when the application was first filed. This application was abandoned three times, and there were serial continuations. It was repeatedly rejected on both prior art grounds and enablement grounds. When it received its first rejection in 1984, the inventor was asked to explain, how is this enabled, what is the proper scope of this invention, how do you overcome the prior art? And the inventor said, and this is in the record at A1146 through 1150, the principle of the device and the method underlying its use rely on the proposition that an infinitesimally small amount of antibody in the form of an antibody-coated probe introduced into the analyte solution will result in fractional antibody binding site occupancy. Throughout the prosecution history, the inventor used the terms antibody binding site as synonymous. Antibody binding site is synonymous with binding site. Antibody is synonymous with binding agent. But how does that exclude nucleic acids? Because nucleic acids are not antibodies. They're a completely different type of substance. Just by the mere definition of nucleic acids, then? That is correct. They're scientifically different, as the court acknowledged below. They're biologically different. And the key here is the reference to the term binding site. But they also do have binding sites, don't they? No. They have nucleotide bases, which, in the process of transmitting genetic information, hybridize with other bases. Isn't that a binding site? No, not at all. Not within the meaning of this patent. And the reason is... But that's the question, isn't it? Whether, in fact, the kind of binding that operates, that has come to be understood only in the last whatever it is, the last decade, of the nucleic acid probes does, in fact, operate in a similar way as far as the operability in these dilutions, which we're told is the breakthrough. But the breakthrough depends on this concept of discrete binding sites. An antibody usually has, and this is in the specification... That's because antibodies work through discrete binding sites, whereas the DNA probes the entire molecule, the entire segment, will bind and probe in that way. But when the inventor was asked, in terms of defining the invention, where are the binding sites on an antibody, the inventor points to what are called the hypervariable regions, which attach to a particular epitope of an antigen. That's the binding sites. You can count them. There are one, there are two. Now, binding can occur, as the inventor acknowledged, on other parts of the molecule. But that doesn't make the other parts of the molecule binding sites. The binding sites are these discrete regions which are known in advance. When the inventor was asked, what are the binding sites, have you ever used the term binding sites to refer to an oligonucleotide strand, he said, not in my career have I ever used that. When he was asked... It may not be the scientific usage, but why isn't the principle similar when, in fact, if the basic principle is the dilution factor, which, as far as I can tell from the fact that this debate is going on, is the same whether you're using the DNA probe and the segment of DNA probe or whether you're pursuing the classical antibody-antigen binding site? The key is not simply dilution, because that would have encompassed a lot of other prior art. In fact, there were prior art rejections because of, in fact, Dr. Eakin's own writings with regard to small amount of binding agent. The key is fractional occupancy. In other words, you can know in advance the number of binding sites in your binding agent, and then you can determine the fractional occupancy, the number of binding sites that are engaged by the analyte. With a substance like nucleic acid, which, as the record clearly indicates, no one could tell you, does a strand of nucleic acid have one binding site, 25 binding sites, 0 binding sites? It's not known in advance. So you cannot calculate proportional occupancy or fractional occupancy. But you can with protein substances that have a discrete binding site. That is what its function is. The nucleotide bases in DNA do not serve that function. Yes, they do hybridize, but they don't serve the function of performing a discrete binding site. And this was a point that was repeatedly emphasized in the prosecution history. Again, and the examiner recognized it. Does it have to be a discrete binding site, or can it be a region of the binding site? The term that is used throughout the specification is binding site in the sense of a discrete binding site, not a binding region. Not a region. Because a binding region could include the entire antibody. As the inventor recognized, and this is in the record at 1071, binding can occur at any part of an antibody. There are disulfide bonds that binding can occur. But those don't make those regions binding sites. The binding sites are these specific structures, the lock and key mechanism, that can be used by an antibody or by a few other protein substances, such as protein receptors. That has no analog in DNA. There is no reference, and certainly nothing in the prosecution history, which would extend that structure to DNA. And I think that the Court's opinion in Biogen is very significant in that respect. When we're dealing with highly complex biological methods, such as the Court was in that case, you can't simply assume that a particular structure in a molecule can be applied to one that is performing a different function. So you can't analogize the binding site on an antibody to the nucleotide bases on DNA. And there's nothing in the record that suggests that equation. Now the only reference that they mention is the Littman patent. The Littman patent was in the prosecution history. But that was a patent that reflected the use of antibodies to bind to DNA molecules, double-stranded DNA molecules. And it was called epitopic binding. The epitope, of course, is the region on an antigen that an antibody binds to. There's nothing in the prosecution history at all that reflects nucleic acid-to-nucleic acid binding. On a single strand. On a single strand. Nothing whatsoever. And, in fact, the specification points us away from that. Because the specification in defining what is meant by a binding agent in the 099 patent says one or at most two binding sites. But you wouldn't be limited to that, though, would you? Just because it says one or two binding sites? It could be more than two binding sites? It says conventionally one or at most two. And most antibodies have two binding sites. And, again, the key is that they are these distinct structures on the molecule whose purpose is to bind. And, again, throughout the prosecution history, as well as the testimony of the inventor, which is here offered to show what would a person skilled in the art at the time of the invention have understood this to mean, in light of the intrinsic record? Well, you read the intrinsic record, and to overcome these repeated rejections, he's saying this is a key principle which is not understood in the field of immunology and immunometric assays. He doesn't talk at all. He never mentions once DNA, nucleic acid, northern blot technology, any other technology that would speak to DNA. The focus is exhaustively, exhaustively on immunology and antibodies in the prosecution history. So in terms of the notice function, that is entirely served by the appropriate limitations that this district court reached after an exhaustive review and multiple briefings on this very issue. And, again, I think Biogen, Judge Newman's opinion on that, is a good template for this case. Well, those were different facts. There were different facts. But in that case, what is interesting is the applicant in that case, in the prosecution history, said that whether it was a single construct or it could include multiple constructs for the delivery of the genetic material. There was at least a mention in the prosecution history of this. Well, but, you know, what strikes me here, again, is more that there was the after-developed technology of the DNA probes, which work the way they work, as explained in the briefs, and as broadly I've tried to understand them. But the principle that Multilite developed of the extreme dilution factors and how that works and how it's measured based on the amount of binding in these contexts seems to apply just as well, whether you're using DNA or whether you're using the antigen-antibody approach. Well, there's certainly nothing in the record that suggests that Affymetrix uses this principle. We don't measure concentration. Nobody says they don't. One has to assume that they are. It's not disputed, as far as I could tell. I thought the only thing that was disputed was whether, in fact, the DNA probes should be viewed as within the scope of the binding principle and the binding site principle. That was certainly the basis for the court's grand summary judgment in this case. But we vigorously dispute that we use this principle whatsoever to measure concentration. Our DNA probes do not measure concentration. We do not measure concentration. What this case has gone forward on the theory is that, well, you use small amounts of nucleic acid when you're testing for, say, mutations. That's the theory on which this case has gone forward. And in light of the intrinsic record, which is really quite consistent in this case and very compelling, the discussion is in the context of immunoassays in which binding agents having very specific, highly variable binding sites are used to determine fractional occupancy. Again, when the inventor, in fact, the patent office, in discussing it with the inventor, said that the basic principle here is one that applies in immunoassays and immunometric techniques. That is the way a person skilled in the art read this at the time because it's not just any binding agents. It's binding agents having binding sites specific for the analyte such that fractional occupancy can be determined. Because the principle, which is a basic application of Langmuir's isotherm, is that you must be able to determine fractional occupancy. From fractional occupancy, you can determine concentration. And given the affinities of these substances, you can use very small amounts of the binding agent. But all of that is clearly circumscribed by the field, which in this case is immunoassays. Now, with regard to the extrinsic evidence, in this case, the multilite points to references which postdate the patent. Do not discuss nucleic acid as having binding sites specific for the analyte. But discuss generally binding or binding pairs. That is not the meaning that was intended by this intrinsic record. The meaning intended by this intrinsic record is binding sites specific for the analyte for purposes of determining fractional occupancy. And no suggesting at all that that meaning could apply to molecules such as nucleic acid. But that's a plain limited meaning. Excuse me? That's a plain limited meaning definition, isn't it? The term binding agents having binding sites specific for the analyte has to be read in light of what a person skilled in the knowledge would have understood at that time. And in light of the evidence, in fact, there's no contradiction at all. A person skilled in the art at that time would have understood that to mean the highly specific regions of an antibody that bind to an analyte. The specific analyte. That bind to the specific analyte. And of course, our immune system has millions and millions of possible antibodies that bind very specifically to the epitope on an antigen. That's not true of nucleic acid. The nucleotide base, a C, binds to a G, an A to a T. And that's why, as the judge noted below, none of the scientists in this case could tell you how many binding sites are on a nucleic acid molecule. You can't know that in advance. Is it one base or 25 bases? Plus, DNA has this promiscuous quality of binding on and on itself, which shows that it lacks the specificity that was emphasized by the inventor. Well, not itself, but its complement, I suppose. That's correct. Okay. Any questions for Mr. Riley? Any more questions? Thank you, Mr. Riley. Thank you. Your Honor, I'd like to pick up on this last point. And this is the discussion of the so-called discrete binding sites that Mr. Riley mentioned. The word discrete does not appear in the patent. And the fact is, all of the discussion that we've just heard about properties of DNA is DNA in the abstract. DNA can be thousands of nucleotides long. But what's important for this invention and for this discussion is not DNA in the abstract, but the DNA that the assay designer has selected to use as a probe in the assay. The assay designer selects a piece of DNA that it wants to put on a solid support with reference to a particular analyte that it wants to select, the complement. And with respect to that – I don't think Mr. Riley used the term discrete. I think he just said that there was only a specific binding for a specific analyte. Well, what he is trying to say – Defined. What I think he's trying to say is that if you have thousands of nucleotides in solution, you can't say exactly what the binding site is. But the point is, these are assays in which someone has taken a piece, for example, of 25 nucleotides and affixed them to a solid support and said, this is my binding agent, and it's looking for a particular complement in solution, the analyte. That is a highly specific reaction. We've presented evidence that there are over one trillion combinations so long as your selection is 20 nucleotides long or more. For this reason, the Fodor patent, Stephen Fodor, one of the founders of Affymetrix, talks about a DNA probe in an assay as having a binding site. This is in Dr. Fodor's own patent. He also talks about fractional occupancy. It works exactly the same way. You see how many binding sites are filled, how many binding sites are unfilled, and you determine fractional occupancy. It works just as much for a DNA probe in an assay as it does for an antibody in an assay, and that's why it cuts across this invention. But as I understand it, a DNA probe would have maybe one binding site or a million binding sites. How would you differentiate between the two then? Two responses to that, Your Honor. We've presented evidence that a DNA probe in an assay has one binding site. That is the face of that probe that is selecting the analyte in solution. The second point is that there's no limitation to the number of binding sites in this patent. The conventionally one or at most two binding site limitation that the district court imposed was an error. It was a discussion of the background of the invention and prior art assets. There was no discussion of a particular number of binding sites. In fact, Dr. Ullman, Affymetrix expert, testified that even antibody binding agents can have 10 binding sites. So there is no limit to the number of binding sites, although we did present evidence that a probe in an assay has one binding site. It was said best by Dr. Ullman again, Affymetrix expert. The binding site is defined by the complementary strand. Even Dr. Ullman could use the term binding site to refer to the reaction between the probe in the assay and the analyte subject to be selected. That is a very highly specific reaction. It is one that is very precise, and that's why these DNA assays work. They can select the analyte as opposed to other things in the solution, and that's all that's required. The Lipman patent, which Mr. Riley mentioned, that mentions specifically DNA probes in assays. He talked about some features of antibody binding that are not applicable, but the Lipman patent talks about a specific binding pair that can work with respect to DNA probes on the one hand and DNA analytes on the other hand, and that is part of the intrinsic record in this case. Mr. Riley mentioned the issue of concentration. That is not an issue in appeal with respect to the evidence that we have produced on their determining concentration. The issue with respect to concentration is the claim construction and our problem with the district court's construction of limiting it to particular types of units, and that is our only issue with respect to concentration on appeal. The district court said it had to be expressed with particular units in mind, and our point is that concentration can be expressed in many different ways, including ways that do not have a denominator, because if the sample volume is the same time and time again, the assayist can basically omit reference to a denominator and simply refer to concentration, assuming that the sample volume size is the same time and again. Unless there are further questions, Your Honor, I believe I've concluded. Thank you, Mr. Climack. Thank you, Mr. Riley. This has taken into submission.